05-2499ghmPotterM&O.wpd

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JERRY POTTER, | § | |
|       Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-2499 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
|       Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Jerry Potter, an inmate of the Texas Department of Criminal Justice – Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging his state felony conviction.  Respondent has filed a motion for summary judgment.  (Docket Entry No. 11.)  Petitioner has responded.  (Docket Entry No. 13.)

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this case.

## I.  BACKGROUND AND GROUNDS FOR RELIEF

Petitioner pleaded no contest to burglary of a habitation with intent to commit theft and "true" to two enhancement paragraphs in Cause Number 883572 in the 338th District Court of Harris County, Texas.  Before accepting petitioner's plea, the trial court admonished him in writing and in open court of the nature of the charges and the

consequences of pleading guilty.  (S.F. Vol. II, III.)  Petitioner averred in the written admonishments that he understood the consequences of his plea, including the possible range of punishment, and stipulated that his decision to plead guilty was voluntary.  *Ex parte Potter*, Application No. 57,300-02, pp. 174-181.  Petitioner further stipulated that all of the acts and allegations in the indictment against him were true and correct.  *Id*.  At the subsequent sentencing hearing, the trial court sentenced petitioner to twenty-eight years confinement.  (S.F. Vol. III.)

Petitioner's conviction was affirmed on appeal pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967).  *Potter v. State*, No. 01-02-01325-CR (Tex. App. – Houston [1st Dist.] 2003, pet. ref'd) (not designated for publication).  The Texas Court of Criminal Appeals refused discretionary review, *Potter v. State*, PDR No. 0209-04, and denied state habeas relief without a written order on findings of the trial court without a hearing.  *Ex parte Potter*, at cover.

Petitioner raises the following grounds for federal habeas relief:

(1)     the evidence was insufficient to support his plea;

(2)     there was a breach of his plea agreement;

(3)     his plea was involuntary due to false promises;

(4)     trial counsel was ineffective; and

(5)     he was denied his right to direct appeal.

Respondent argues that these grounds fail as a matter of law.

## II.   THE APPLICABLE LEGAL STANDARDS

### A.   AEDPA Standards

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent.  *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  *Williams,* 529 U.S. at 409.  In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable.  *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding.  *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

**B.      Habeas Review of Guilty Plea**

A federal court will uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary and intelligent.  *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).  For a guilty plea to be intelligently and knowingly entered, the defendant must understand both the true nature of the charge against him, and the consequences of a guilty plea.  *United States v. Briggs*, 939 F.2d 222, 227 (5th Cir. 1991).  A guilty plea generally waives constitutional deprivations occurring prior to the plea, except a habeas claim challenging the validity of the guilty plea itself.  *Haring v. Prosise*, 462 U.S. 306, 319-20 (1983); *Matthew v. Johnson*, 201 F.3d 353, 364 (5th Cir. 2000).  This waiver includes all claims of ineffective assistance of counsel except insofar as the alleged ineffectiveness relates to the giving of the guilty plea.  *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).  Consequently, unless a petitioner

can show that his guilty plea was involuntary, his habeas claims are waived except those claims relating to the guilty plea itself.

### III.   INSUFFICIENCY OF THE EVIDENCE

Petitioner complains that because the State failed to present any evidence of his commission of the offense, the evidence is insufficient to support his conviction.  In denying habeas relief, the state court on collateral review found that "[Petitioner's] challenges to the sufficiency of the evidence are not cognizable in post-conviction habeas proceedings."  *Ex parte Potter*, p. 170.  The Texas Court of Criminal Appeals relied on this finding in denying habeas relief.  *Id.*, at cover.  Accordingly, this ground is procedurally defaulted and barred from consideration by the Court.

Under the procedural default doctrine, a habeas claim is procedurally defaulted and barred from federal review when, as here, a state court clearly and expressly bases its dismissal of an inmate's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal.  *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default bar will be excused only upon a showing of cause for the default and actual prejudice attributable to the default, or a showing that the federal court's failure to consider the claim will result in a miscarriage of justice because of actual innocence.  *Id.*; *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).  Petitioner fails to demonstrate the existence of good cause and prejudice excusing the default or that a miscarriage of justice

5

will result. Accordingly, petitioner's challenge to the sufficiency of the evidence is barred by the doctrine of procedural default.

Regardless, petitioner's challenge to the sufficiency of the evidence is waived. By entering a guilty plea, petitioner waived his right to demand any constitutionally-sufficient evidence to sustain his conviction. *See United States v. Broce*, 488 U.S. 563, 569 (1989). State courts are under no federal constitutional duty to establish a factual basis for the guilty plea prior to its acceptance, unless the judge has specific notice that such an inquiry is needed. *Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir. 1986). Thus, the rule in *Jackson v. Virginia*, 443 U.S. 307 (1979), which mandates sufficient evidence from which a rational fact finder could find guilt beyond a reasonable doubt, is inapplicable to convictions based on a guilty plea. *See Smith*, 786 F.2d at 702. Even assuming applicability of *Jackson*, the record shows that petitioner signed a stipulation of evidence as part of his plea, such that the plea was supported by evidence of commission of the offense. *Ex parte Potter*, pp. 142-43. Respondent is entitled to summary judgment dismissing this habeas ground.

## IV.  BREACH OF PLEA AGREEMENT

Petitioner claims he pleaded guilty in exchange for the promise that he would be given deferred adjudication and attend a Cenikor drug rehabilitation program. He argues that this agreement was breached when the trial court sentenced him to twenty-eight years incarceration.

6

The record shows that petitioner entered his plea without a recommendation on punishment from the State, and that he was informed that the full range of punishment between twenty-five and ninety-nine years or life imprisonment would be available to the trial court for sentencing.  (S.F. Vol. II, pp. 4-5.)  At the subsequent sentencing hearing, petitioner again was informed that the range of punishment for his sentence was between twenty-five and ninety-nine years or life imprisonment.  (S.F. Vol. III, p. 3.)  In his affidavit submitted on state collateral review, trial counsel testified that throughout the course of his representation of petitioner, he explained to petitioner that he "was facing up to a life sentence in the penitentiary," and that "the fact that he had two prior felony convictions, would in all probability result in some sentence between the 25 years and life in the penitentiary."  *Ex parte Potter*, pp. 161-62.  Trial counsel further testified that he

> explained to Mr. Potter that probation was a very unlikely opportunity, and further that the Cenikor Foundation, which had agreed to accept the Defendant if probation was granted, was a program that had, for quite some time, not been in favor among the criminal courts of Harris County, Texas.  Any belief that Mr. Potter may have had as to what would happen would have come from entirely within his own mind[.]

*Id.*, p. 162.

In denying habeas relief under this ground, the state court on collateral review found trial counsel's affidavit statements true, and made the following relevant finding:

> 3.      [Petitioner] was not promised deferred adjudication, a suspended sentence, or alternative confinement in a treatment facility or other drug rehabilitation program in exchange for his plea of no contest in the primary case.

*Ex parte Potter*, pp. 169-70.  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.  *Ex parte Potter*, at cover.

This Court must presume the factual determinations of the state court to be correct, unless petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.  This he does not do. Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment on this issue.

## V.   INVOLUNTARY PLEA

Under three subgrounds, petitioner argues that his plea of no contest was involuntary and coerced because (1) he did not commit the offense; (2) he pleaded no contest believing he would be sent to a Cenikor drug rehabilitation program; and (3) he believed he had the right to withdraw his plea if the court rejected the plea bargain agreement.  This Court has already rejected petitioner's subground (2) argument that he was promised deferred adjudication and attendance at a Cenikor drug rehabilitation program in exchange for his plea.

Petitioner claims under subground (1) that he is innocent because he denied committing the offense at the plea hearing.  However, the record shows that he also signed

8

a written stipulation of evidence, attesting to his commission of the offense. *Ex parte Potter*, pp. 142-43.  If a petitioner challenges his guilty plea, there must be independent indicia of the likely merit of his contentions, and mere contradiction of his statements at the guilty plea hearing will not carry his burden.  *Davis v. Butler*, 825 F.2d 892, 894 (5th Cir. 1987). Moreover, a claim of actual innocence, standing alone, is insufficient to merit federal habeas relief.  *See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).  There also must be evidence of an independent federal constitutional violation in the state criminal proceeding. *Id*.  In the instant case, petitioner has failed to establish an underlying constitutional violation, and his assertion of innocence in this proceeding affords him no basis for relief.

Under subground (3), petitioner contends he was denied his right to withdraw his guilty plea following sentencing.  In support, petitioner refers to the written admonishments he signed at the plea hearing, which reflect his understanding that the trial court would permit him to withdraw his plea if it rejected any plea bargain agreement.  *Ex parte Potter*, p. 178.  However, the state habeas court found, and the record clearly shows, that there was no plea bargain agreement.  *Id*., pp. 175; S.F. Vol. II, p. 4.   Petitioner entered his plea without a punishment recommendation from the State.   Petitioner does not rebut the presumed correctness of the state court's finding by clear and convincing evidence. Accordingly, the provision regarding plea withdrawal had no application in petitioner's case, and lends him no support in this proceeding.

9

In denying habeas relief, the state court found that, "[Petitioner] fails to overcome the presumption created by the trial court records that his guilty plea was knowing and voluntary." *Ex parte Potter*, p. 170. The state court further found that petitioner was not promised deferred adjudication, a suspended sentence, or alternative confinement in a treatment facility or other drug rehabilitation program in exchange for his plea of no contest. *Id.*, p. 169. The Texas Court of Criminal Appeals relied on these findings in denying habeas relief. *Ex parte Potter*, at cover. Petitioner fails to present clear and convincing evidence rebutting the presumed correctness of these findings.

Petitioner fails to show that the state court's denial of habeas relief was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in evidence. *Williams*, 529 U.S. at 404-05. Respondent is entitled to summary judgment on these issues.

## VI.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual

prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691. Under *Strickland*, judicial scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. 466 U.S. at 689. This Court, therefore, must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

In context of a guilty plea, the plea generally waives all non-jurisdictional defects and constitutional deprivations occurring prior to the plea, except as to habeas claims challenging the validity of the guilty plea. *Haring,* 462 U.S. at 319-20; *Matthew,* 201 F.3d at 364. This

11

waiver includes claims of ineffective assistance of counsel, except as relate to the plea itself. *Reeves*, 19 F.3d at 1062.

Under three subgrounds, petitioner claims that trial counsel was ineffective in (1) failing to investigate the case, (2) providing him erroneous legal advice, and (3) inducing him to plead no contest. In his affidavit submitted to the state habeas court, trial counsel testified in relevant part as follows:

> I was appointed to represent Jerry Potter in connection with the offense of burglary of a habitation in the above referenced cause number on August 16, 2001. . . . I met with Mr. Potter on the original appointment date and in court on approximately eleven other settings, at each time the Defendant having a full opportunity to discuss this case and have any questions that he had answered. At the time of my initial meeting, Mr. Potter discussed potential defenses that he might have had to the burglary of a habitation and reasons he felt that the State would not be able to prove the allegations of burglary of a habitation. Mr. Potter had information that might lead to potential witnesses in his case but I was not able to determine, during my meetings with him, that anyone could provide an alibi for the exact time of the burglary. During the course of my representation of Mr. Potter, the following specific actions on his behalf were taken:
>
> a.      On November 12, 2001, I filed a number of motions and requests for notice on Mr. Potter's case including a Request for Notice of Intent to Introduce C.C.P. Article 37.07, Section 3 Evidence, a Defendant's List of Potential Witnesses and Request for Notice of Intent to Use Impeachment Evidence (609(f)), Motion in Limine as to Punishment Evidence or Argument of Counsel, Motion for Discovery, Request for Notice of Intent to Introduce Rule 404(b) Evidence, Motion for Advance Approval for Payment of Allowable Non-Routine Out of Court Hours.
>
> b.      On December 12, 2001, the Assistant District Attorney sent me a notice of intentions to use evidence of prior convictions and extraneous offenses, a copy of which was furnished to the Defendant.

c.     On January 6, 2002, again at Mr. Potter's request, I requested and the Court approved a Motion for an Investigator to work for the Defendant in trying to find witnesses, etc.

d.     On February 13, 2002, the State provided me with the State's notice to use business records, those being jail card records on the Defendant, a copy of which was furnished to him.

e.     I had acquired, at the Defendant's request, certain records from the Texas Pain Institute which were filed with the Court along with a business records affidavit on June 28, 2002.  On May 30, 2002, I had had to obtain an Order of the Court to compel disclosure of those records which was then provided to the Texas Pain Institute resulting in them providing the records.

f.     Shortly thereafter, I received several proposed motions from the Defendant which I reviewed with him including a proposed motion to quash enhancement paragraphs, a motion for discovery and inspection of evidence, and a motion for a fast and speedy trial.

During the time that I represented Mr. Potter, he was always extremely helpful in providing information to me regarding his case.  In order that we not miss any particular avenue of defense, any particular witness that he wished to have subpoenaed to court, any particular record that he wanted subpoenaed, a great deal of our communication was done via mail.  Mr. Potter was a prolific writer, providing witnesses to talk to, suggested lines of defense at trial, suggested areas of cross-examination for the State's witnesses, suggested questions that would raise, perhaps, some doubt in the mind of the jury when he went to trial, so that I would not miss some area that he thought important. From September 6, 2001 through July 24, 2003, there were some 85+ letters between the two of us.  In addition, I visited with Mr. Potter several times in jail to discuss matters face to face with him.  To the best of my ability, I responded to each and every letter that the Defendant mailed to me, fully, sometimes requesting additional information, sometimes raising questions for him, and always as promptly as possible.  On some days I would actually have 3 or 4 separate letters go to Mr. Potter covering various matters.

Our investigator, at the time, was John Everly, a very proficient private investigator who is now employed by the Harris County County Attorney's

Office.  Mr. Everly also visited with Mr. Potter to try to make sure that any avenue of defense was fully explored.  On three separate occasions, Mr. Everly provided me with reports of his actions and activities on behalf of Mr. Potter and copies of those were forwarded to Mr. Potter or given to him in person at one of our many settings on his case.

During the course of my representation, Mr. Potter filed a grievance against me making several complaints.  The initial complaint was apparently filed in September 2002 and was ultimately dismissed by the State Bar of Texas on November 20, 2002.  On December 19, 2003, I was notified of another grievance filed by Mr. Potter against me and that grievance was ultimately dismissed by the State Bar of Texas on the basis that Mr. Potter's complaints had been previously considered.  At no time during the time that I represented Mr. Potter did his filing of a grievance ever affect my desire to have the best things possible happen in connection with his case.

On at least five occasions, the Defendant was provided information from the State's file in response to questions that he had about certain evidentiary matters contained within the offense report.  At no time during my representation of him did the State ever close their file to me and to Mr. Potter so that we had continued access to any information contained within their offense reports and supplements.

During the course of my representation, subpoenas were issued for several witnesses that the Defendant had requested be subpoenaed, in an effort to make sure that any potential relevant witness was present in court on Mr. Potter's behalf.  Records that I have already mentioned regarding his health, and other mitigating issues were also obtained to make sure that any potential punishment evidence would be before the jury in his trial.

I also subpoenaed the Defendant's prior criminal history from the Texas Department of Criminal Justice so that we could have an opportunity to review and make sure that prior conviction records were valid and that would be admissible at trial.  Mr. Potter had been indicted as an habitual offender and was facing a 25 year to life sentence.

During my representation of Mr. Potter his case was reset for trial several times between an initial date of February 25, 2002 and the final jury trial setting of October 14, 2002.  I have no independent recollection of precisely

14

why each date was reset, but resettings were explained to Mr. Potter at the time.

We always expected that Mr. Potter's case would proceed to a jury trial. It was a surprise to me when, on his October 14, 2002 trial date, with a jury panel on the way, Mr. Potter decided to enter a plea of no contest to the offense of burglary of a habitation and true to the two prior convictions. A presentence investigation report was requested and following that presentence report Mr. Potter was sentenced to 28 years in [TDCJ].

*   *   *   *

Certainly, at no time, did I or anyone else do anything that would have coerced, pressured, or in any way caused Mr. Potter to enter into an involuntary or unknowing plea. However, it could certainly be said that Mr. Potter, faced with a jury on the way on his case, had a difficult decision to make as to running the risk of up to life in the penitentiary with a jury, or allowing the court, which might be more lenient with him ultimately, to set punishment. Ultimately, Mr. Potter's trust and faith in the Court to somehow give him a lesser sentence than a jury was a wise decision in retrospect given that he received, from the Judge, 28 years in the [TDCJ]. That was certainly to the lower end of the punishment range.

*Ex parte Potter*, pp. 156-162. In denying habeas relief, the state court found that the facts

asserted by trial counsel in his affidavit were true, and that under *Strickland*,

1.   [Petitioner] fails to demonstrate that trial counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

2.   The totality of the representation afforded [petitioner] was sufficient to protect his right to reasonably effective assistance of counsel.

*Ex parte Potter*, pp. 169-70. The Texas Court of Criminal Appeals relied on these findings

in denying habeas relief. *Id.*, at cover.

15

Under subground (1), petitioner claims that trial counsel was ineffective in failing to investigate the following:

a.  why the police officer who arrived at the scene did not speak to petitioner;

b.  why, if petitioner broke a window to gain access to the burglarized apartment, all of the window glass was outside and not inside the premises;

c.  why the apartment manager was in the apartment for thirty minutes before the police arrived;

d.  why the witness was in the apartment for about forty-five minutes before the police arrived;

e.  why the victim gave conflicting values for the stolen baseball cards and camera; and

f.  why the witness was in the apartment after the burglary and how he could hear the window breaking when tenants in closer apartments did not.

Petitioner further claims that counsel was ineffective in failing to obtain pictures of the crime scene; failing to talk to other alleged witnesses at the apartment complex; failing to obtain rulings on certain pretrial motions; and failing to request a new judge due to a conflict.  To the extent petitioner complains that trial counsel failed to sign the pretrial motions he filed with the trial court, this Court notes that the pretrial motions appearing in the state record are signed.

If a petitioner claims that counsel erred by failing to investigate or discover certain exculpatory evidence, the *Strickland* prejudice determination will depend upon whether the discovery of such evidence would have influenced counsel to change his advice regarding

16

the guilty plea.  *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).  Of course, whether counsel would have changed his advice depends on his prediction whether the evidence would change the outcome of the trial.  Analogously, to show prejudice in regard to a claim that counsel failed to raise a certain defense, the petitioner must show that the defense likely would have been successful at trial.  *Id*.  In the context of a guilty plea, a petitioner must show that counsel provided ineffective assistance and that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  *Roe v. Flores-Ortega*, 528 U.S. 470, 485 (2000).

To establish his failure to investigate claim, petitioner also must establish with specificity and probative evidence what a proper investigation would have revealed and how it would have benefitted him.  *United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000). Petitioner does not provide probative evidence of how the result of the proceedings would have been different had counsel conducted additional investigations or undertaken additional actions.  Petitioner's conclusory assertions that trial counsel failed to conduct an adequate investigation of the facts or develop a meaningful defense do not meet the criteria necessary to merit habeas relief.  Moreover, petitioner fails to show that, but for counsel's alleged deficient performance, he would have pleaded not guilty and insisted on going to trial for the charge of burglary of a habitation as an habitual offender.

In subground (2), petitioner claims that the only reason he pleaded no contest was because trial counsel told him he would be given deferred adjudication and attend the

17

Cenikor drug rehabilitation program in lieu of incarceration.  In denying habeas relief under this argument, the state court on collateral review found that petitioner had not been promised deferred adjudication or attendance at a drug rehabilitation program in exchange for his plea.  *Ex parte Potter*, p. 169.  Petitioner fails to present clear and convincing evidence rebutting the presumed correctness of this finding.  The state court further found that petitioner failed to meet his burden of proof under *Strickland*, and that the totality of representation afforded petitioner was sufficient to protect his right to reasonably effective assistance of counsel.  *Id*.  Petitioner fails to show that these determinations were contrary to or involved an unreasonable application of *Strickland* or were unreasonable determinations of the facts based on the evidence in the record.

By subground (3), petitioner claims that trial counsel induced and coerced him into pleading guilty by failing to prepare for trial and falsely telling petitioner he would be given deferred adjudication and participation in the drug rehabilitation program.  This argument simply reurges petitioner's arguments under subgrounds (1) and (2), and does not present an independent habeas ground.  As previously noted, the state court found that petitioner was not promised deferred adjudication or participation in a drug rehabilitation program in exchange for his plea, and petitioner fails to rebut the presumed correctness of that finding by clear and convincing evidence.  Petitioner also fails to establish that counsel was deficient in failing to investigate the case, or show prejudice due to counsel's actions or inactions.

18

Petitioner does not demonstrate that counsel induced or coerced him into pleading no contest, and no ineffective assistance of counsel is shown.

Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on the issue of ineffective assistance of trial counsel.

## VII.   DENIAL OF RIGHT TO DIRECT APPEAL

Petitioner claims that his right to a direct appeal was denied because he never received a copy of the appellate record as ordered by the state court of appeals.

The record shows that on May 30, 2003, petitioner's court-appointed appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738, 744 (1967), which was accepted by the state court of appeals.  *Potter*, at 2; *Ex parte Potter*, p. 194.  In its opinion, the state appellate court found that counsel delivered a copy of the appellate brief to petitioner and advised him of his right to examine the appellate record and file a *pro se* brief under state law.  *Id.*  In June and July of 2003, the state appellate court denied petitioner's *pro se* motions for discovery and to dismiss his court-appointed appellate counsel.  The court of appeals directed the court clerk to send petitioner a copy of the appellate record, and ordered petitioner's *pro se* post-*Anders* brief due filed by August 29, 2003.  Petitioner did not file a brief.  Petitioner argues that because the appellate court failed to send him a copy

19

of the appellate record, he was unable to file a *pro se* post-*Anders* brief and was denied his right to a direct appeal.

The record shows that petitioner was appointed counsel on appeal; that appellate counsel obtained and reviewed the record for possible reversible error; that counsel filed a brief certifying that he found no grounds for reversal that he, in good faith, could raise; and that petitioner was sent a copy of the brief and advised of his rights under *Anders*. Under *Anders*, "[a] copy of counsel's brief should be furnished to the indigent, and time allowed him to raise any points that he chooses[.]" *Anders*, 386 U.S. at 744. Accordingly, the state court record shows that petitioner was afforded his rights under *Anders*. Any right that petitioner had to a copy of the appellate record for filing a *pro se* post-*Anders* brief arose under state law, not federal constitutional law. *See, e.g.*, *Hawkins v. State*, 515 S.W.2d 275, 276 (Tex. Crim. App. 1974) (holding that Texas state courts view the opportunity to file a *pro se Anders* response as necessarily implying an opportunity to review the record). Petitioner fails to demonstrate a denial of his constitutional right to direct appeal, and respondent is entitled to summary judgment on this issue.

## VIII.   CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 11) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED** as moot.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on July 31, 2006.

_____
Gray H. Miller
United States District Judge